## 3282.   HIGHTOWER *v.* THE STATE.

1. This court will not interfere with the exercise of the discretion of the trial judge in refusing to postpone the trial of a criminal case, unless it clearly appears that such discretion was abused, to the injury of the accused. In this case the facts in support of the motion to postpone do not show abuse of discretion in the refusal to grant it, nor any resultant injury to the accused.

2. A statement made by the deceased immediately before the difficulty, indicating a pacific mental attitude towards the accused, and near enough to have been heard by the latter, may be admitted in evidence as a part of the res gestæ, although it does not positively appear that the statement was in fact heard by the accused.

3. There was no error in excluding from the evidence a statement made by the accused to the arresting officer, after his arrest and while he was being taken to prison, of what had transpired between him and the deceased just before and at the time of the killing, to the effect that the deceased was the aggressor and he shot him in self-defense. The transaction was ended, the deceased was dead, and the statement was not so nearly connected with the occurrence as to be without suspicion of afterthought.

4. There is no material error in any of the excerpts from the judge's charge to the jury, even when considered separately from the entire charge; and when considered in connection therewith, any apparent minor error disappears.

5. The evidence is in conflict, but is fully sufficient to support the verdict of voluntary manslaughter.

DECIDED APRIL 11, 1911.   REHEARING DENIED APRIL 24, 1911.

Conviction of voluntary manslaughter; from Lowndes superior court—Judge Thomas. February 11, 1911.

*E. K. Wilcox, G. A. Whitaker, J. R. Walker,* for plaintiff in error.

*J. A. Wilkes, solicitor-general, J. M. Johnson,* contra.

HILL, C. J.  Roy Hightower was tried for murder and convicted of voluntary manslaughter.

1.  When the case was called for trial on the 5th of January, 1911, two of the defendant's attorneys, Messrs. Wilcox and Whitaker, requested the court to postpone the trial until the next day, on account of the physical indisposition of Mr. Walker, another of his attorneys; and the refusal to postpone is the subject of one of the assignments of error.  The application was not to continue the case for the term, but simply to postpone until the next day, and is therefore not to be governed by the ordinary rules which apply to motions for a continuance, as found in the statutes on that subject.  Motions to postpone a trial are so largely and peculiarly within the discretion of the trial judge that a reviewing court will not interfere with that discretion, unless it clearly appears that it was abused, to the injury of the movant in the particular instance. A brief examination of the facts upon which the request to postpone was based in the present case will show, we think, that there was no such abuse of discretion by the trial judge, in refusing to grant the request, as would warrant this court in granting a new trial because of the refusal.  According to the evidence in support of the request, it appears that Mr. Walker was not the leading counsel of the accused.  He was not expected to participate in the argument of the case or in the actual examination of the witnesses.  He was employed to prepare the testimony in behalf of the accused and to act in an advisory capacity in the trial of the case; but the trial was to be conducted by Messrs. Wilcox and Whitaker.

But even if the trial had been postponed until the next day, Mr. Walker, the attorney, stated that he would not then be expected to conduct the trial, or be in a physical condition to undertake the conduct of the case.  He was present in court, and in support of the motion to postpone he stated, in substance, that although the accused and his family relied upon him to give direction to the case, the actual trial of the case was entrusted to Messrs. Wilcox and Whitaker, both as to the argument of the case and the examination of the witnesses; that his part would be to advise these attor-

neys in the conduct of the trial. When the court refused to grant the postponement, Mr. Walker remained in the court-room, and did participate in the trial of the case to the extent that he stated in his testimony he would have done in any event. In other words, he was present, aiding in the selection of a jury and in the examination of witnesses. It did not appear in any way that he was incapacitated physically or mentally from rendering all the assistance to the accused, in the trial of the case, that he was employed or was expected to render. There was no allegation or evidence that the accused had been deprived of the presence of any witness because of the indisposition of Mr. Walker, or that any evidence in his behalf had been overlooked on account of such indisposition. Messrs. Wilcox and Whitaker, according to a note of the judge, fully presented the evidence in behalf of the accused and ably submitted his defense to the jury. It further appears, that the homicide was committed in July, and Mr. Walker was then employed by the family of the defendant; that he had frequent conversations with the other attorneys, Wilcox and Whitaker; that the case was originally set down for the November term, and passed to an adjourned term beginning on January 3, and, at the request of counsel, because of the indisposition of Mr. Walker, it was postponed until the 5th of January.

The case did not involve any intricate questions of law or fact. The witnesses to the difficulty which resulted in the homicide were all present, and were all examined, either for the State or for the accused; and an examination of the entire record fails to disclose any hint or suggestion that the accused was deprived of any right, either in the testimony of an absent witness, or in the testimony of the witnesses sworn, or in the management of the case from start to finish, because of the indisposition of Mr. Walker. Mr. Walker had full opportunity from the time of his employment, which was immediately after the homicide, to prepare the evidence and to confer with the associate counsel, and there is no suggestion that this preparation was not made or this conference not had. After a careful examination of all the facts, we have come to the conclusion that, while the judge might very properly have postponed the case until the next day, his failure to do so was not an abuse of his discretion, and did not result in injury to any right of the accused.

2. It appears, from the evidence, that the deceased and the accused had a quarrel a few days previous to the difficulty which resulted in the homicide. On the day of the killing both men were in a "near beer" saloon. The deceased, while talking to a friend, about 10 feet from the accused, referred to this quarrel, and said to his friend: "Me and Hightower [the accused] have had some little trouble. I want to go to him and apologize, and get the matter straightened out." Immediately following this statement of the deceased to his friend, he walked over to where the accused was standing and extended his hand to him, and the difficulty followed. The witnesses for the State and the accused differ as to what was said and what was done at the actual time of the difficulty. The admission of the statement above quoted is one of the errors assigned; it being insisted that the evidence did not show that the statement was made in the presence of the accused, or that the accused heard it, or knew anything of the possible intention of the deceased, and that this remark was irrelevant, and illustrated no issue in the case, and was prejudicial to the rights of the accused.

We think the court did not err in admitting the statement in evidence. It appears that the accused was near enough to the deceased, who was talking in an ordinary conversational tone, to have heard the statement when made, and it was for the jury to decide whether in fact he had heard it. Besides, it was so near to the actual occurrence of the difficulty as to preclude the suspicion of forethought and to make the statement a part of the res gestæ. "Sayings of one party to a rencounter, just before its occurrence, within hearing of the other, may be admitted as a part of the res gestæ." *Williams* v. *State, 59 Ga.* 401.

3. On hearing the shot fired by the accused, a policeman, who was some 25 or 30 yards away, ran into the "near beer" saloon, placed the accused under arrest, and took him at once from the saloon to a buggy, and, while driving on the way to the city hall, the accused gave him a narrative of what had taken place between himself and the deceased just previous to and at the time of the shooting, contending that the deceased had "called him a damned liar and struck him in the face, knocking him back from the counter toward the wall; that he immediately pursued him, struck him in the face again, knocking him further back,

and that when they were near the wall they clinched;" and that, seeing the deceased drop his hand to his pocket, he thought he was attempting to draw a weapon, and he immediately drew his pistol and shot. The court excluded this testimony, and this is one of the errors assigned. It is insisted that it was admissible as a part of the res gestæ.

As correctly stated by Judge McCay, in *Hall* v. *State,* 48 *Ga.* 608, "No precise point of time can be fixed a priori where the res gestæ ends. Each case turns on its own circumstances. . . Is the proof offered of a matter fairly a part of the same transaction? Is it an event happening naturally and spontaneously as a part of the occurrence under investigation? If so, the law permits it to be proven as part of it, since the whole scene, as it has transpired, ought to appear to the tribunal called upon to determine its character. Matters occurring before or after—that is, before the transaction begun or after it ended—are not part of it. To make them such they must be so nearly connected with the occurrence as to be without the suspicion of afterthought or forethought. They must be within the shadow, as it were, of the transaction itself. Is that so in this case? The quarrel was over, some minutes had elapsed, the parties had separated. The prisoner had been arrested." Penal Code (1910), § 1024.

Here the transaction had ended. The accused had shot the deceased. The deceased was dead, and the accused was under arrest, and was being taken by the arresting officer to prison. It does not appear how many minutes had elapsed between the killing and the narration; but it is clear that it was a narration of a transaction which had fully ended, and this statement of the accused, made to the arresting officer, could not in any sense be deemed a natural or spontaneous utterance, and is certainly not free from suspicion of afterthought. In our opinion, it was simply a self-serving declaration, made by the accused to the arresting officer, and the court very properly excluded it from evidence. It could not have any force as a spontaneous utterance of a participant in the difficulty. It could only have such force and effect as could be given to it by its reasonableness, or by the manner of narration, or his character; and this force and effect the jury had an opportunity to give it when it was incorporated by the accused in his statement on the trial.

4.  There are several excerpts from the charge of the court which are assigned as erroneous.  We do not deem it necessary to discuss any of them, for we have examined them carefully in connection with the entire charge.  Even when considered separately, we fail to find any material or harmful error, and when considered in connection with the entire charge any apparent error disappears.

The charge as a whole was fair, full, and correct, presenting clearly to the jury every issue made by the evidence.

5.  There is some conflict in the evidence as to what occurred between the accused and the deceased at the time of the killing. If the evidence in behalf of the State was the truth of the transaction, a verdict for murder would have been fully warranted.  If the evidence for the accused was the truth of the transaction, a case of justifiable homicide in self-defense was not satisfactorily shown.  The evidence, considered as a whole, presents to our minds a very clear case of voluntary manslaughter, and the jury came to the right conclusion.                    *Judgment affirmed.*

Russell, J., dissents from the ruling stated in the first division of the decision.